IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY SINGSON,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF MILLBRAE, *et al.*,<br><br>    Defendants.<br>                                           / | No. C 09-5023 SI; No. C 11-1863 SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL; DENYING PLAINTIFF'S MOTION TO TAX COSTS; REFERRING DEFENDANTS' BILL OF COSTS TO CLERK'S OFFICE FOR REVIEW** |

Plaintiff's motion for a new trial and motion to tax costs are scheduled for a hearing on August 31, 2012. Pursuant to Civil Local Rule 7-1(b), the Court VACATES the hearing. For the reasons set forth below, the Court DENIES plaintiff's motions.

**BACKGROUND**

Plaintiff filed these related cases alleging claims of race discrimination and retaliation against defendants. The Court granted defendants' motion for summary judgment on plaintiff's claims of race discrimination, and a ten-day jury trial was held on the retaliation claims. The jury deliberated for seven days. Throughout their deliberations the jury submitted multiple notes to the Court, requesting to see certain documents, review particular testimony, and asking questions about the evidence. *See* Docket No. 130, C 11-1863 SI.[1]

At 9:50 a.m. on the seventh day of deliberations, May 14, 2012, the jury submitted a note to the Court which stated, "We're stuck." *Id*. at 5. Outside the presence of the jury, the Court asked the

---

[1] All citations to the docket are to C 11-1863 SI.

parties how they wished to proceed. Mariani Decl. Ex. K at 1:19-20. Counsel for both parties and the Court engaged in the following discussion on the record:

| | | |
|---|---|---|
| THE COURT: | | We've got a note from the jury. "We're stuck." So my first question is: what do you request the Court do? |
| MR. SCOTT: | | Your Honor, my knee-jerk reaction is, are they stuck on liability or are they stuck on something else? |
| THE COURT: | | Well, that is one of those questions that you will not find out the answer to right now. |
| MR. SCOTT: | | But – I mean, they've been out seven days. So my knee-jerk reaction is, if they haven't worked it out, having them out longer isn't going to make any difference. |
| THE COURT: | | Well, I don't know. Mr. Moye, what about you? |
| MR. MOYE: | | Your Honor, I guess my inclination is not a whole lot different than counsel. I would say, given we've not heard anything from them prior to this time along these lines, I don't know that it would not necessarily be futile to ask them to continue their deliberations at least perhaps to the end of the day to determine whether or not – you know, we don't know what they're thinking or what they're doing because they haven't raised this issue with us before. I guess if we were the second or third day and we got this sort of note, it would be a little bit clearer, but, you know, we've never had the opportunity to try an impression upon them the need to come to a decision as per instructions, so . . . |
| THE COURT: | | I think what I'll do then is I have the form instruction 3.5, which is the deadlocked jury instruction, which is pretty much useless, in my opinion. But I do have it. I can read and tell them that we will check in with them again after lunch. If you want to do that. |
| MR. SCOTT: | | Your Honor, I leave it up to your wisdom and experience. |
| MR. MOYE: | | Fine Your Honor. |
| THE COURT: | | Let's do that. All right. |

*Id.* at 1:16-3:4.

Following that discussion, the Court recalled the jury to read them the Ninth Circuit Model Jury Instruction (Civil) 3.5 "Deadlocked Jury." The Court instructed the jury as follows:

> Welcome back, ladies and gentlemen. You may all be seated. Ladies and gentlemen, I received a note from you this morning indicating that you're stuck so I have one more instruction to share with you, and then I'm going to ask you to continue for a little bit longer. The instruction is as follows:
>
> Members of the jury, you have advised that you have been unable to agree upon a verdict in this case. I have decided to suggest a few thoughts to you:

2

> As jurors, you have a duty to discuss the case with one another, and to deliberate in an effort to reach a unanimous verdict, if each of you can do so, without violating your individual judgment and conscience.
>
> Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors.
>
> During your deliberations, you should not hesitate to re-examine your own views, and change your opinion if you become persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict. All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the – your present position.
>
> I remind you, during deliberations, you are to consider the instruction I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They're all equally important.
>
> You may now retire and continue your deliberations. I'm going to ask that you go back and continue to deliberate at least until after lunch. And we will get back to you mid afternoon and find out if you think it would be useful to continue. But I would ask that you do that next.
>
> So, thank you.

*Id*. at 3:10-4:25.

The jury then retired to continue their deliberations. At approximately 1:00 p.m., the jury notified the Court that it had reached a unanimous verdict. Before the clerk read the verdict, the Court advised the jury as follows: "What will happen, ladies and gentlemen, is Tracy will read the verdict out loud, and then she will ask each one of you in turn if that's your verdict, so that we make sure that it's unanimous." *Id*. at 5:15-18.

The Clerk then read the special verdict form out loud. The jury found that plaintiff did not prove, by the preponderance of the evidence, that (1) defendants Neil Telford, Marcia Raines, or Mark Raffaelli retaliated against plaintiff for exercising his First Amendment rights; (2) defendants Neil Telford, Marcia Raines and/or Chief Violett knew of and approved defendant Raffaelli's acts of retaliation; or (3) that the City of Millbrae engaged in conduct that, taken as a whole, materially and adversely affected the terms and conditions of plaintiff's employment. After the announcement of the verdict, the Court polled the jury, asking each juror "is that your true and correct verdict?" Each of the eight jurors responded that this was the true and correct verdict. *Id*. at 7:22-8:19.

3

**DISCUSSION**

**I.      Plaintiff's motion for new trial**

**A.      Legal standard**

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Rule 59 gives the trial judge the power to prevent a miscarriage of justice. *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246 ( 9th Cir. 1957). A new trial may be ordered to correct manifest errors of law or fact, but "the burden of showing harmful error rests on the party seeking the new trial." *Malhiot v. Southern Cal. Retail Clerks Union*, 735 F.2d 1133 (9th Cir. 1984). A motion for new trial may invoke the court's discretion insofar as it is based on claims that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Where a movant claims that a verdict is against the clear weight of the evidence, a new trial should be granted where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987).

The authority to grant a new trial under Rule 59 "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980) (per curiam); *see Vickery v. Fisher Governor Co.*, 417 F.2d 466, 470 (9th Cir. 1969) (trial court has "wide judicial discretion" in considering new trial motion).

**B.      *Allen* charge**[2]

Plaintiff raises two grounds for new trial. First, plaintiff contends that a new trial is warranted because the *Allen* charge administered to the jury had an impermissibly coercive effect on the

---

[2] The use of a supplemental jury charge given by the court to encourage a jury to reach a verdict after the jury has been unable to agree for some period of deliberation has long been sanctioned. *See Allen v. United States*, 164 U.S. 492, 501-02 (1896). Such instructions are referred to as *Allen* charges.

4

deliberations. In evaluating whether a supplemental instruction given is impermissibly coercive, the Ninth Circuit focuses on four factors: (1) the form of the supplemental instruction, (2) the period of deliberations following the instruction, (3) the total time of deliberations, and (4) any other indicia of coerciveness or pressure. *United States v. Wauneka*, 842 F.2d 1083, 1088 (9th Cir. 1988). Plaintiff argues that in light of the jury's lengthy deliberations, "for the jury to render a verdict so soon after receiving the charge, a reasonable inference can be drawn that one or more members of the jury who had sided with Plaintiff abandoned their views in order to render a verdict." Motion at 4:25-28. Plaintiff does not challenge the form of the instruction, nor does plaintiff contend that there is any other evidence of coercion.

The Court concludes that plaintiff has not demonstrated that the *Allen* charge had a coercive effect.[3] There were no prior *Allen* instructions, and the instruction was given only after the jury informed the Court that they had reached an impasse. At no point did the Court inquire about the numerical division of the jury or what progress the jury had made towards reaching a verdict. The Court administered the model *Allen* instruction after consulting with counsel, and neither party objected to the giving of the instruction. *See Lowenfield*, 484 U.S. 231 ("We are mindful that the jury returned with its verdict soon after receiving the supplemental instruction, and that this suggests the possibility of coercion. . . . We note, however, that defense counsel did not object to either the polls or the supplemental instruction. We do not suggest that petitioner thereby waived this issue, . . . but we think such an omission indicates that the potential for coercion argued now was not apparent to one on the spot."). Plaintiff asserts that the *Allen* charge had a coercive effect on the jury based on the fact that the jury had deliberated for seven days and then reached a verdict approximately an hour after receiving the *Allen* charge. However, taking into consideration the length of the trial (10 days) and the degree of complexity of the case before the jury, the Court cannot say that the total period of deliberation was so disproportionate as to raise an inference that the *Allen* charge coerced the jury. The Court also finds it significant that during the course of the jury's deliberations, the jury submitted multiple notes to the

---

[3] Defendants contend that plaintiff waived his right to challenge the giving of the *Allen* instruction because plaintiff consented to its use at trial, and plaintiff did not raise an objection before the jury was discharged. The Supreme Court has held that the failure to object to a supplemental *Allen* charge does not waive the issue. *See Lowenfield v. Phelps*, 484 U.S. 231, 240 (1988).

5

1 Court, indicating that it was carefully considering and debating the merits of the case.

2 The authority cited by plaintiff is distinguishable because in those cases the courts found impermissible coercion based not solely on the short period of time between the giving of the *Allen* instruction and the jury's verdict, but also because there were additional facts that indicated coercion. In *Smith v. Curry*, 580 F.3d 1071 (9th Cir. 2009), the Ninth Circuit held that the trial judge coerced a lone holdout juror when the judge, over the objection of the defense, gave a "third supplemental charge, [that] went far beyond *Allen*. The trial court by that time knew what was dividing the jury and therefore commented on specific evidence to address the known concerns of a holdout juror." *Id*. at 1080-81. Similarly, in *United States v. Contreras*, 463 F.2d 773 (9th Cir. 1972) (per curiam), the judge *sua sponte* gave an *Allen* charge after the jury had deliberated for nearly eight hours and requested clarification of certain of the judge's instructions. The Ninth Circuit held that under those circumstances, where the jury gave no indication that it was deadlocked, the *Allen* charge was prematurely given and coercive. *Id*. at 774; *see also United States v. Gypsum Co*., 438 U.S. 422, 462 (1978) (court gave multiple *Allen* instructions and, in improper meeting between judge and foreman, there was an "exchange suggesting the strong likelihood that the foreman carried away from the meeting the impression that the judge wanted a verdict 'one way or the other.'"); *United States v. Evanston,* 651 F.3d 1080, 1082 (9th Cir. 2011) (coercion found where district court, after inquiring into the reasons for the jury deadlock, permitted supplemental argument by counsel focused on the factual issues dividing the jury); *Jiminez v. Myers*, 40 F.3d 979, 981 (9th Cir. 1993) ("In view of the disclosure after the second impasse that only one juror remained in the minority and the trial court's implicit approval of the 'movement' toward unanimity, the court's instruction to continue deliberating until the end of the day sent a clear message that the jurors in the majority were to hold their position and persuade the single hold-out juror to join in a unanimous verdict, and the hold-out juror was to cooperate in the movement toward unanimity."); *United States v. McElhiney*, 275 F.3d 928, 945 (10th Cir. 2001) (coercion found where, after receiving a note from the jury stating that they were at an impasse, judge repeatedly emphasized the desirability of reaching a verdict and stated to the jury, "I have received a note from the jury here that is very distressing to me because this is been one of the greatest major efforts made in time and attention and money that I have noted in my 24 years as being a judge.").

### C. Weight of the evidence

Plaintiff also contends that the jury's verdict was against the clear weight of the evidence. Plaintiff argues that the undisputed evidence showed that (1) from the date plaintiff was hired until he failed to sustain an Internal Affairs finding against another officer, he had received above average performance evaluations; (2) after plaintiff filed a lawsuit against Marc Farber, plaintiff began to receive negative performance evaluations; (3) almost immediately after plaintiff made complaints to the City on October 27, 2010 and December 6, 2010, he was transferred to a team of officers that was hostile to him in a police department that had become polarized as a result of plaintiff's lawsuit; (4) defendants acted in an unprecedented manner by denying plaintiff an accommodation (to be reassigned to Team 2) at the request of his doctor; and (5) defendants acted in an unprecedented manner by hiring private investigators and putting plaintiff under surveillance. Plaintiff asserts that no reasonable jury in light of this evidence could conclude that defendants did not retaliate against plaintiff on account of his First Amendment activities.

Defendants respond that there was substantial evidence to support the jury's verdict. The Court agrees.[4] Defendants presented testimony and evidence to demonstrate legitimate, nonretaliatory reasons for taking each of the employment actions that plaintiff alleged to be adverse. For example, defendants introduced evidence showing that the Department's decision to change plaintiff's shift for a six-month period was within the authority of the Chief of Police under the Memorandum of Understanding between the police officers' Association and the department, and that plaintiff was reassigned to the different shift because the other available sergeants decided not to bid for the weekend evening shift, plaintiff was the junior sergeant, and Chief Telford decided that a regular sergeant was needed to cover the weekend night shift. Defendants also introduced evidence that Chief Violett decided to place plaintiff on a Performance Improvement Plan to address deficiencies in plaintiff's performance. With regard to plaintiff's request that he be returned to his assignment to Team 2, defendants put on testimony and evidence demonstrating that Chief Telford responded appropriately by contacting plaintiff's doctor,

---

[4] Indeed, plaintiff recognizes that the jury could reasonably have reached a defense verdict, by stating in the reply brief that "the evidence in this case could be reconciled to support either a plaintiff's verdict or a defense verdict." Reply at 1:9-10.

7

1 and arranging for a paid administrative leave of absence until plaintiff was able to return to work. After
2 learning from plaintiff's doctor of the potential impact of plaintiff's medical condition on his ability to
3 perform his job, and with the agreement of plaintiff's doctor, the Department directed plaintiff to
4 participate in a fitness for duty evaluation to confirm that he was fit to serve and perform his duties as
5 a police sergeant. Defendants explained that they decided to use a GPS tracker and human surveillance
6 to confirm plaintiff's location while he was on duty because officers had reported to them that, while
7 working with plaintiff, they were unaware of his whereabouts and his absence posed potential safety
8 issues for plaintiff and his team members. For these reasons, the Court does not "have a firm conviction
9 that the jury has made a mistake." *Landes Const. Co., Inc.*, 833 F.2d at 1372.

## II.  Plaintiff's motion to tax costs

### A.  Legal standard

28 U.S.C. § 1920 authorizes a judge or clerk of the district court to tax costs. Pursuant to Federal Rule of Civil Procedure 54(d), costs incurred by the prevailing party may be assessed against the losing party as of course and may be taxed by the clerk. "Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be awarded." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999).

The taxation of costs lies within the trial court's discretion. *In re Media Vision Tech. Secs. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). If the district court wishes to depart from the presumption in favor of awarding costs, it must gives reasons for doing so by explaining "why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate or inequitable to award costs." *Assoc. of Mexican-American Educators v. Cal.*, 231 F.3d 572, 593 (9th Cir. 2000). In contrast, "a district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003).

8

### B. Discussion

Plaintiff contends that the Court should depart from the presumption in favor of awarding costs to defendants because awarding costs would chill future similar civil rights cases addressing matters of public concern by public employees, and because the issues at trial were a close call. Alternatively, plaintiff requests that the Court substantially reduce defendants' costs. Plaintiff contends that some of defendants' costs are exorbitant, such as the $7,562.50 sought for daily trial transcripts.

Defendants respond that plaintiff's case does not qualify as the type of civil rights litigation in which a federal court would typically deny costs. Defendants assert that courts have applied this exception in cases where a civil litigant's claim "presents issues of the gravest public importance." *Mexican-American Educators v. Cal.*, 231 F.3d at 593 (affirming decision to deny costs to prevailing defendants in an "extraordinarily important, case" where plaintiffs were group of individuals and nonprofits of limited financial means, case "affect[ed] tens of thousands of Californians and the state's public school system as a whole," plaintiffs' claims had merit, and defendants' costs were "extraordinarily high").

The Court agrees with defendants that plaintiff has not demonstrated that this action is one of those unusual cases in which it would be inappropriate or inequitable to tax costs to the prevailing party. Although the Court found that plaintiff had made complaints involving matters of public concern, the retaliation claims that proceeded to trial did not affect a large group of people or present issues of broad public interest.

However, the Court finds that defendants are not entitled to recover the costs of daily trial transcripts because defendants did not seek court approval for these costs prior to the start of trial. *See* Civil Local Rule 54-3(b)(3); *Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed. Cir.1996). In his reply, plaintiff states that his motion only "highlighted that some of the costs Defendants seek are exorbitant and wholly unnecessary." Reply at 4:1-2. Accordingly, the Court directs plaintiff to file his objections to defendants' bill of costs no later than September 10, 2012. The Clerk shall then review defendants' bill of costs and plaintiff's objections thereto.

**CONCLUSION**

For the foregoing reasons, the Court DENIES plaintiff's motion for new trial, and DENIES plaintiff's motion to tax the bill of costs. Docket Nos. 134 & 135. After plaintiff filed his objections to defendants' bill of costs, the Clerk shall, consistent with this Order, review defendants' bill of costs and plaintiff's objections thereto.

**IT IS SO ORDERED.**

Dated: August 28, 2012

SUSAN ILLSTON
United States District Judge